## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

PRISCA TITUS,
    *Plaintiff*,

    v.

JOHNSON CONTROLS, INC.,
    *Defendant*.

No. 3:22-cv-1090 (JAM)

## RULING GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff Prisca Titus is an African American man who worked for sixteen years as a journeyman for defendant Johnson Controls, Inc.—a heating, ventilation, and air conditioning company. He claims that Johnson Controls terminated him because of his race and age, in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. He also alleges that Johnson Controls retaliated against him, in violation of Title VII, for complaining about the alleged racial discrimination. Johnson Controls now moves for summary judgment on all three claims.

Because I conclude that there are no genuine issues of fact to support any of Titus's claims of discrimination or retaliation, I will grant the motion for summary judgment.

### BACKGROUND

Except as otherwise noted, the following are the undisputed facts of this case.[1] Titus is an African American man who was 60 years old during the relevant period.[2] He was an employee at Johnson Controls from 2004 through 2020.[3] During that time, he held a license to be a heating,

---

[1] In accordance with D. Conn. L. Civ. R. 56, the parties have filed their respective statements of material fact. Doc. #61-2 (Johnson Controls Local Rule 56(a)(1) fact statement); Docs. #70, #71 (Titus's Local Rule 56(a)(2) fact statements in response to and in addition to Johnson Controls Local Rule 56(a)(1) fact statement).
[2] Doc. #70 at 6-7 (¶ 10(e)).
[3] *Ibid*; *id.* at 15 (¶ 34).

piping, and cooling unlimited journeyperson, and he served on the company's HVAC commercial truck-based team.[4]

During 2019 and into 2020, Titus's work team included the following members listed in order of job seniority: Paul Murphy (Journeyman), Scott Dubb (Technical Team Lead), Robert Pilbro (Foreman), Michael Misunas (Journeyman), Prisca Titus, William Murray (Journeyman), Carl Zingarelli (Journeyman), and Richard Lam (Journeyman).[5] The team also had two apprentices: Todd Solsbury and Aaron Suchinski.[6]

Titus was the only African American on the team.[7] Beginning in June 2018, the team was supervised by Jason Mitchell.[8] The team was dispatched to service locations by Michele Beauton and her supervisor David Boragine.[9]

Around September 2019, the company began to lose customers, and the journeymen saw their number of work hours go down.[10] Relatedly, Beauton was limited in the number of places to which she could dispatch Titus, because some customers had requested that he no longer perform work at their sites.[11] Additionally, there were a number of incidents where Beauton

---

[4] Doc. #71 at 1 (¶¶ 1, 3).
[5] Doc. #70 at 5-7 (¶ 10). Zingarelli voluntarily resigned on February 20, 2020. *See* Doc. #61-1 at 5 n.3; Doc. #69 at 9.
[6] Doc. #69 at 9. Johnson Controls spells the apprentices' last names as "Salsbury" and "Suzinski" in its briefing. *See* Doc. #61-1 at 4 n.2.
[7] Doc. #70 at 5-7 (¶ 10); *see also* Doc. #61-1 at 4-5 (tabular presentation of dates of hire of each team member, their race, and their dates of birth).
[8] Doc. #70 at 5 (¶ 9).
[9] *Id.* at 7-8 (¶¶ 11-13).
[10] *Id.* at 8 (¶ 15).
[11] *Id.* at 8 (¶ 14). Titus denies that he ever worked at one of the listed customers who allegedly complained and insists that he contacted another listed customer and that the customer denied preventing him from working at its site. He fails to admit or deny Johnson Controls' statement with respect to customers Sprint and First Church in Stanford. *See ibid.*

contacted Titus to schedule him for work, and Titus said he was unavailable to take on the job, allegedly because of Beauton's short notice.[12]

Eventually, in January 2020, Titus expressed his frustration about the short notice dispatch calls during a text conversation with Beauton. He ended the interaction with the following statement: "love ♥ I you beautiful women."[13] Beauton responded that she just required confirmation for the job, but Titus did not provide it.[14]

Shortly after that exchange, Mitchell requested that Titus come to the office and gave him a verbal warning that addressed the inappropriate communication to Beauton.[15] In that same meeting, Mitchell told Titus that some customers had questioned the time Titus was spending at each work site, and that he needed to take greater care with signing in and out of work sites.[16]

On February 26, 2020, Johnson Controls decided to terminate Richard Lam.[17] The stated reason was a reduction in force due to slow business, and Lam was selected because he was the least senior member of the team.[18]

In March 2020, Titus called Johnson Controls' ethics hotline and complained that Mitchell was not assigning him work due to Titus's race, while other team members were "being assigned work on a more regular basis."[19] Johnson Controls insists that Mitchell was not made

---

[12] *See id.* at 8-9, 14 (¶¶ 16-17, 29).
[13] *Id.* at 9 (¶ 17).
[14] *Ibid.*
[15] *Id.* at 9 (¶ 18).
[16] *Ibid.*
[17] *Id.* at 11 (¶ 21).
[18] *Ibid.*; *id.* at 5-7 (¶ 10); Doc. #61-12.
[19] *See id.* at 11, 14 (¶¶ 22, 28 and response). Johnson Controls did not guarantee any journeyman any hours of work, but it did permit them to quote their own work so that they might build up their own books of business. *Id.* at 4-5 (¶¶ 7-8).

aware of Titus's complaint to the ethics hotline, although—as discussed later in this ruling—Titus maintains that Mitchell said to him: "If you come at me, I come at you."[20]

Jennifer McIsaac, Johnson Controls' Human Resources Manager, investigated Titus's hotline complaint via review of the Commercial Team journeymen's hours and with interviews of Titus, Titus's union steward Tom O'Neill, and Mitchell.[21] When McIsaac wrapped up her investigation, she concluded that the company's Connecticut branch was financially struggling, was overstaffed based on its current workload, and that Titus had stayed home due to a lack of work, client complaints, and his own failure to quote work.[22]

Meanwhile, the COVID-19 pandemic had been wreaking economic havoc. In response, Johnson Controls furloughed the Commercial Team journeymen, including Titus, in April 2020.[23] The furlough was meant to last 30 days, but was ultimately extended through June 2020.[24] Murray's and Titus's furloughs were further continued through July 3, 2020.[25] Finally, on July 2, 2020, because of the decline in business worsened by the pandemic, Mitchell terminated the employment of both Murray and Titus.[26] Johnson Controls has maintained that

---

[20] *Id.* at 16 (¶¶ 39-40).
[21] *Id.* at 11 (¶¶ 23-24).
[22] *Id.* at 13-14 ((¶ 28).
[23] *Id.* at 14 (¶ 30).
[24] *Id.* at 14 (¶¶ 30-32).
[25] *Id.* at 15 (¶ 33).
[26] *Id.* at 15 (¶ 34). Titus does not address the company's statement that the termination was due to "the significant decline in business compounded by the COVID-19 pandemic." *Ibid.* He only denies that he was one of the two least-senior employees on his team at the time of the reduction in force. *Ibid.*

this decision was based on seniority, which the parties dispute on account of Johnson Controls'

retention of two apprentices—Todd Solsbury and Aaron Suchinski.[27]

Titus alleges discrimination "as a result of his race/color and/or age" in violation of Title

VII and the ADEA, and retaliation for his ethics hotline complaint, in violation of Title VII.[28]

Johnson Controls now moves for summary judgment.[29]

DISCUSSION

Summary judgment may be granted only where "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who

opposes the motion for summary judgment and then decide if those facts would be enough to

allow a reasonable jury to decide the case in favor of that party. If so, I must deny summary

judgment. My role at this stage is not to judge the credibility of witnesses or to resolve close and

contested issues but solely to decide if there are enough facts that remain in dispute to warrant a

trial. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*).

### *Title VII racial discrimination claim*

Title VII prohibits an employer from engaging in intentional employment

discrimination—known as "disparate treatment"—on the basis of race. *Ricci v. DeStefano,* 557

U.S. 557, 577 (2009); *see also* 42 U.S.C. § 2000e *et seq.* Titus alleges that he was assigned less

work than his coworkers in 2019-2020 because of his race and that he was later fired for the

same impermissible reason.[30]

---

[27] *Id.* at 15 (¶¶ 34-35).
[28] Doc. #1 at 10-11 (¶¶ 13-14).
[29] Doc. #61.
[30] Doc. #1 at 9-10 (¶¶ 7, 11, 12); Doc. #70 at 15-16 (¶ 38).

When evaluating a claim of racial discrimination under Title VII, courts ordinarily apply the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Under this framework, a plaintiff must first offer a *prima facie* case of discrimination, which requires showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.

The defendant may then rebut the plaintiff's *prima facie* case by articulating a legitimate, nondiscriminatory reason for its actions. *See ibid.* If so, the burden then shifts back to the plaintiff to show that the defendant's proffered reason was either a pretext or an incomplete reason for discrimination. *See ibid.* "[W]hile a plaintiff may satisfy the third-stage burden under *McDonnell Douglas* by showing that the employer's stated reason was false and just a pretext, or cover, for a discriminatory intent, a plaintiff is not required to demonstrate the falsity of the employer's proffered reason," and instead "[a] plaintiff may rely on other evidence that an impermissible criterion was a motivating factor in the employer's decision to take the adverse action." *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024).[31]

In discrimination cases, plaintiffs are not required to present direct evidence—such as explicitly race-based comments or conduct—to prove discriminatory intent. Rather, because of "the elusive nature of intentional discrimination," plaintiffs are permitted to "rely on bits and pieces of information to support an inference of discrimination." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023). The summary judgment evidence must be "carefully scrutinized" for indirect or circumstantial proof which, if believed, would show discrimination. *Ibid.*

---

[31] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

Nevertheless, despite the leeway granted to plaintiffs to proceed by means of indirect or circumstantial evidence, a plaintiff "must still present more than conclusory allegations to survive a motion for summary judgment." *Ibid.*

Applying these standards to this case, I first conclude that Titus has failed to make out a *prima facie* case of racial discrimination as to the alleged adverse action of a reduction in number of work hours. There is no admissible evidence to show that Titus's hours were reduced compared to other team members. Johnson Controls points out that Titus had no knowledge of other team members' hours, nor did he have access to their schedules.[32] Titus counters with inadmissible hearsay, stating that while he admits that he did not have access to his coworkers' schedules, "through conversations with other team members [Titus] was aware that other team members were getting more work assignments than [him]."[33] But the hearsay statements of Titus's co-workers are not admissible for their truth at summary judgment. *See, e.g.*, *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013); *Taylor v. Potter*, 148 F. App'x 33, 35-36 (2d Cir. 2005).

Nor is there evidence that any reduction in hours was because of Mitchell's consideration of Titus's race. Titus admits that Mitchell "never made comments about [Titus's] race, color, or age."[34] According to Titus, "[Mitchell] don't have to [say anything] . . . it's the action. Action. The actions tell you."[35] But the alleged actions by themselves—a reduction in work hours—does not suggest that they were prompted by consideration of race.

And Titus makes these speculative allegations about what Mitchell's actions show despite admitting or failing to appropriately deny that the company does not guarantee hours to

---

[32] Doc. #70 at 15-16 (¶ 38 and response).
[33] *Ibid.*
[34] *Id.* at 15 (¶ 36 and response).
[35] Doc. #61-15 at 168 (277:21-25).

its journeymen, that he did not have access to his team members' schedules, that he missed or did not respond to several dispatch requests, and that he could not be dispatched to all possible customers because some had requested that Titus no longer perform work for them.[36] In short, Titus has not sustained even his minimal burden to show that he was subject to a race-based reduction in his number of work hours

With respect to the later termination of his employment, even if I assume that Titus has carried his *prima facie* burden, he does not show that the neutral reason advanced by Johnson Controls for his termination—a seniority-based reduction in force—was a pretext for discrimination. Johnson Controls points to evidence to explain and show that seniority was the only factor that it considered when deciding to reduce its workforce—first in February 2020, when it terminated Richard Lam (a Caucasian male and the least senior member of the Commercial Team) and then again in July 2020, when it terminated Titus and Murray (a Caucasian male) and who were the next two least senior journeymen.[37]

Titus answers that he was not among the next least-senior members of his team, and that apprentices Solsbury and Suchinski, both Caucasian males, should have been terminated before he was.[38] It is true that an inference of discrimination may be supported by showing that similarly situated employees who are not in the protected group were treated more favorably than the plaintiff. *See King v. Aramark Servs. Inc.*, 96 F.4th 546, 563 (2d Cir. 2024). But the two apprentices were not similarly situated to Titus. They were undergoing training, performing limited tasks, charging clients at a lower labor rate, and getting paid at a lower wage rate than the journeymen like Titus.[39] "[A]dverse actions taken against employees who are not similarly

---

[36] Doc. #70 at 4-5 (¶ 7); *id*. at 15-16 (¶ 38); *id*. at 8-9, 14 (¶¶ 16-17, 29); *id*. at 8 (¶ 14).
[37] *Id*. at 11, 15 (¶¶ 21, 34).
[38] *Id*. at 15 (¶¶ 34-35).
[39] *See* Doc. #76-1 at 3.

situated cannot establish an inference of discrimination." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).

In addition, both Lam and Murray are Caucasian, and the reduction in force therefore disproportionately affected Caucasian members of Titus's team. In other words, Titus fails to show that those in protected classes were affected disproportionately when compared to individuals in non-protected classes. *See Montague v. Sodexco, Inc.*, 2017 WL 4476969, at *13 (D. Conn. 2017) (finding that the plaintiff failed to establish a *prima facie* case in part because she failed to put forth evidence that those affected by a reduction in force "were disproportionately members of any of the protected classes [plaintiff] is a member of").

In short, Titus's Title VII racial discrimination claim fails under application of the *McDonnell Douglas* standard. Accordingly, I will grant Johnson Controls' motion for summary judgment as to the Title VII claim for racial discrimination.

### *ADEA claim*

The Age Discrimination in Employment Act (ADEA) grants protection to individuals "who are at least 40 years of age." 29 U.S.C. § 631 *et seq.* A claim under the ADEA is evaluated under the same *McDonnell Douglas* framework as Title VII claims. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167-68 (2d Cir. 2014) (*per curiam*).

Here, I will assume for present purposes that Titus has carried his *prima facie* burden, that Johnson Controls in turn has carried its burden to advance an age-neutral reason (implementation of its reduction in force policy), and I will focus instead on whether a genuine issue of fact suggests that Johnson Controls' stated reason was either a pretext or that it was incomplete in the sense that other evidence could tend to show that Titus's protected age status was a reason for his termination.

Titus was 60 during the relevant period, and he was the oldest member of his team. But all team members at the time of the second reduction in force were over the age of 40, and four of the six remaining employees who were not terminated were over the age of 50.[40] Furthermore, Lam and Murray—both of whom were terminated—are younger than Titus.[41]

Thus, the evidence of the reduction in force tends to show that the age of the employees—as distinct from their job seniority—was not a factor in selecting who would be terminated. *See, e.g.*, *Martinez v. New York City Transit Auth.*, 672 F. App'x 68, 70 (2d Cir. 2016) (noting that a reduction in force's "lack of disparate impact on older employees strongly suggests that age was not a factor in Plaintiffs' termination"); *McGuinness v. Lincoln Hall*, 263 F. 3d 49, 55-56 (2d Cir. 2001) (granting summary judgment in part because people outside the protected class were also terminated). Beyond Titus's conclusory speculation about the motives of Johnson Controls, the record does not show—even when interpreted in the light most favorable to Titus as the non-moving party—that there is a genuine issue of fact to show that Johnson Controls considered Titus's age when deciding to terminate his employment.

### Retaliation

Title VII prohibits an employer from retaliating against an employee "because [the employee] has opposed . . . an unlawful employment practice" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a); *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 351-52 (2013). Titus claims that Johnson Controls retaliated against him by terminating his employment after he complained to the company's ethics hotline that Mitchell was not assigning work hours to Titus because of Titus's race.

---

[40] *See* Doc. #70 at 5 (¶ 10).
[41] *See id.* at 5 (¶¶ 10(e)-(f), (h)). Lam was born in 1980, Murray was born in 1976, and Titus was born in 1960.

In order to show a genuine issue of fact to support a claim for retaliation, a plaintiff "must submit sufficient admissible evidence to allow a trier of fact to find: (i) conduct by the plaintiff that is protected activity under Title VII; (ii) of which the employer was aware; (iii) followed by an adverse employment action of a nature that would deter a reasonable employee from making or supporting a discrimination claim; (iv) that was causally connected to the protected activity." *Gonzalez v. NYU Langone Hosps.*, 2022 WL 4372199, at *1 (2d Cir. 2022) (quoting *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014)).

The parties do not dispute that Titus engaged in protected activity when he complained that his work hours were being reduced because of his race. Nor do they dispute that Johnson Controls engaged in adverse action by terminating Titus's employment. Instead, they dispute whether Mitchell—the relevant decisionmaker at Johnson Controls—was aware of Titus's protected activity. And, even assuming he was, they dispute whether there is enough evidence to suggest a causal connection between Titus's complaint and his later termination.

When McIsaac interviewed Mitchell as part of her investigation, she did not tell him that she was investigating because of Titus having made an ethics hotline complaint.[42] Nevertheless, by way of an affidavit opposing summary judgment, Titus claims that Mitchell knew of the complaint he made about him to the ethics hotline because "shortly after [Titus] complained," Mitchell told Titus "if [you] come after [me], I will come after [you]."[43] But Titus testified to the contrary at his prior deposition. He repeatedly testified that he did not remember when Mitchell

---

[42] *See id.* at 12-13 (¶ 27 and response) (Johnson Controls' statement that "Ms. McIsaac did not inform Mr. Mitchell that Plaintiff made a hotline complaint," and Titus's response not denying that "it is claimed that Ms. McIsaac did not inform Mr. Mitchell about the Plaintiff's discrimination complaint against Mr. Mitchell," but adding that "Ms. McIsaac had a conversation with Mr. Mitchell about the scheduling of work for the Plaintiff").
[43] *See* Doc. #69 at 4 (¶ 11); *see also* Doc. #70 at 16 (¶ 40).

made the "I will come after you" statement, and that he did not know if Mitchell knew about the

company's investigation of Titus's complaint.[44]

Under the "sham affidavit" doctrine, the Second Circuit has recognized the principle that

"'a party may not create an issue of fact by submitting an affidavit in opposition to a summary

judgment motion that, by omission or addition, contradicts the affiant's previous deposition

testimony.'" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014)

(quoting *Hayes v. New York City Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996)). Put

differently, "factual issues that a party creates by filing an affidavit crafted to oppose a summary

judgment motion that contradicts that party's prior testimony are not genuine issues for trial."

*Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014). And "a party cannot create a

triable issue of fact, and thus avoid summary judgment, by renouncing deposition testimony to

the effect that he could not remember a particular fact which he now purports to remember."

*Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 94 (S.D.N.Y. 2020).

Here, I apply the sham affidavit doctrine to discount Titus's claim in his affidavit that

Mitchell made the "I will come at you" statement shortly after Titus lodged his complaint about

working hours. This claim is contradicted without reason by Titus's prior deposition testimony

that he could not remember when Mitchell allegedly made this statement.

Nor can Titus's retaliation claim survive simply because he was terminated within just a

few months of his hotline complaint. At the summary judgment stage, temporal proximity is not

enough alone to establish retaliatory causation. *See Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172,

182 (2d Cir. 2023).

---

[44] *See* Doc. #61-15 at 134 (230:13-25); *id.* at 169 (278:8-18); *id.* at 173-75 (327:23-25, 328:1-25, 329:9-15).

In addition, the record shows that Johnson Controls began its reduction in force measures *before* Titus complained about his work hours. The reduction began on February 26, 2020, with the termination of Lam.[45] Titus made his complaint on March 1, 2020, and he was fired as part of the continued reduction in force measures on July 2, 2020.[46] Furthermore, Titus has admitted that he knew that Johnson Controls was losing customers and that business was rough in 2019 and early 2020—an admission that undercuts his argument that the reduction in force was a pretext for discrimination.[47] He has also not presented evidence that the July reduction in force measures were not related to the February measures.

If an employer takes an adverse action before the employee has even engaged in protected activity such as making a complaint about discrimination, then it is impossible to say that the adverse action was in retaliation for the complaint. *See Gerzhgorin v. Selfhelp Cmty. Servs., Inc.*, 2023 WL 2469824, at *2 (2d Cir. 2023) (citing *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019)). And an employer's "continuation of a course of conduct that had begun before the employee complained does not constitute retaliation because, in that situation, there is no causal connection between the employee's protected activity and the employer's challenged conduct." *Guzman v. Crothall Healthcare Co.*, 2021 WL 5048993, at *17 (E.D.N.Y. 2021).

In short, even viewing the facts in the light most favorable to Titus, there are no genuine issues of fact to show that he was subject to discrimination on the basis of his race or age or that

---

[45] Doc. #70 at 11 (¶ 21).
[46] *Id.* at 11, 15 (¶¶ 22, 34).
[47] *Id.* at 15 (¶ 37 and response) (Titus admitting that fewer job assignments were given to him in 2019 and 2020 and not denying that he was aware that "business was slow"); Doc. #61-15 at 103 (197:8-24) ("[W]e know we losing customers.").

he was subjected to retaliation because he complained about discrimination. Accordingly, I will grant Johnson Controls' motion for summary judgment.

### CONCLUSION

For the reasons set forth above, the Court GRANTS the defendant's motion for summary judgment (Doc. #61). The Clerk of the Court shall close this case.

It is so ordered.

Dated at New Haven this 18th day of November 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

14